*12-3247-cv*
*Kolel Beth Yechiel Mechil v. YLL et al.*

## UNITED STATES COURT OF APPEALS

### FOR THE SECOND CIRCUIT

———————————

August Term, 2013

(Argued: May 23, 2013                                          Decided: August 30, 2013)

Docket No. 12-3247-cv

———————————

KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC.,

*Plaintiff-Appellee,*

SYLVIA BEILUSH, Trustee of the Frankel Purchasing Trust,
LIEBUSH FRANKEL, FRANKEL PURCHASING IRREVOCABLE TRUST,
FRANKEL PURCHASING IRREVOCABLE TRUST,

*Consolidated-Plaintiffs-Appellees,*

v.

YLL IRREVOCABLE TRUST, KOCHAV S.A.R.L.,
a Luxembourg S.A.R.L.,

*Defendants-Appellants,*

MERIDIAN TRUST COMPANY, as Trustee of YLL Irrevocable Trust,
WILMINGTON SAVINGS FUND SOCIETY, FSB,

*Defendants.*

———————————

Before:
POOLER and LIVINGSTON, *Circuit Judges*, GOLDBERG, *Judge.*[*]

———————————

---

[*]The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

Appeal from the order of the United States District Court for the Southern District of New York (Victor Marrero, *Judge*), entered on July 27, 2012, denying Defendants-Appellants' motion for vacatur of an arbitration award and granting Plaintiff-Appellee's motion for confirmation of that same arbitration award.

Affirmed.

Brian Dale Graifman, Gusrae Kaplan Nusbaum PLLC, New York, New York, *for Defendants-Appellants*. Also on the brief: Philip J. Loree, Loree & Loree, Manhasset, New York, *of counsel for Defendants-Appellants*.

IRA S. LIPSIUS (DAVID BENHAIM, PHILLIP M. MANELA, *on the brief*), Lipsius-Benhaim Law, LLP, Kew Gardens, New York, *for Plaintiff-Appellee*.

RICHARD W. GOLDBERG, *Judge*:

This case involves a dispute between Plaintiff-Appellee Kolel Beth Yechiel Mechil of Tartikov, Inc. ("Kolel") and Defendants-Appellants YLL Irrevocable Trust and Kochav S.A.R.L. ("Appellants") regarding life insurance policies. The parties disputed ownership of the policies and, according to their contract, submitted the dispute to a rabbinical arbitration panel. On April 10, 2012, the arbitration panel appointed by the parties entered an award mandating the immediate transfer of the insurance policies at issue to Kolel. However, only two of the three panel members signed the award, and shortly thereafter Appellants filed an action seeking a temporary restraining order on enforcement of the award and followed with a motion for vacatur. Kolel subsequently submitted its own motion for confirmation of the arbitration award. The district court granted Kolel's motion for confirmation and denied Appellants' motion for vacatur.

Appellants then filed a motion for reconsideration, which was also denied.

Appellants appeal the district court's decision, arguing (1) that the district court erroneously denied their motion for vacatur because the neutral arbitrator was evidently biased in favor of Kolel and corrupt; (2) that the district court should have granted their motion for vacatur because the arbitrator's bias resulted in a premature decision without consideration of material and pertinent evidence; and (3) that the district court erroneously denied their motion for reconsideration. We conclude, *inter alia*, that Appellants have not presented any evidence that meets the high burden of proof necessary to vacate an arbitration award, and therefore the district court properly denied their motion for vacatur and granted Kolel's motion for confirmation of that same arbitration award. Appellants' appeal of the district court's denial of their motion for reconsideration is similarly unsustainable. Therefore, we **AFFIRM** the decisions of the district court.

**BACKGROUND**

**A. The Underlying Dispute and Procedural History**

This case involves a dispute between Kolel and Appellants regarding ownership of life insurance policies ("the Policies"). On March 15, 2011, Kolel sold the Policies to Appellants pursuant to a written purchase agreement ("the Contract"). Under the Contract, Appellants agreed to pay the premiums on the Policies, and in the event of a death of an insured, Kolel and Appellants would divide the death benefits. On October 28, 2011, Kolel filed a complaint alleging that Appellants had failed to pay the premiums, allowing the policies to lapse and breaching the contract. In February 2012, the parties agreed to arbitrate the dispute by written agreement (the "Arbitration Agreement"). The Arbitration Agreement is composed of two

documents, the Agreement, dated January 12, 2012 and the Contract of Arbitration, dated February 2012. The Arbitration Agreement provides that a panel of three rabbis ("the Panel") arbitrate the case. Each party designated a rabbi to represent it on the panel, and together the parties agreed that Rabbi Shlomo Kaufman would serve as the third, neutral, arbitrator.

In the Arbitration Agreement, the parties agreed that they sought a speedy resolution of the case within two months, and granted the Panel wide latitude in how to reach a decision. The Arbitration Agreement allows the panel members to "make their award based upon Din Torah, compromise, settlement, or any other way they wish to reach a decision." In addition, the Arbitration Agreement notes that "[t]he Members of the [Panel] need not disclose, to the Parties or to anyone else the . . . basis for their award . . . ," the decision could be made by two of the three arbitrators, and the parties waived any procedural or evidentiary rights. The panel held at least seven sessions, beginning February 10, 2012, and no record was made of the proceedings. On April 10, 2012, the Panel issued the Arbitration Award ("the Award"), which mandated the immediate transfer of the policies to Kolel. However, only two of the arbitrators signed the award: Rabbi Kaufman and Rabbi Grausz, Kolel's appointed arbitrator. Rabbi Bergman, the Appellants' appointed arbitrator, did not sign the award.

**B. Action for Vacatur in the District Court**

Shortly after the Panel issued the Award, and before the policies could be transferred to Kolel, Appellants filed an action seeking a temporary restraining order enjoining enforcement of the award and also an order "nullifying and vacating" the award. Appellants based their action for vacatur on allegations that Kaufman was corrupt and partial to Kolel. Appellants submit many allegations against Rabbi Kaufman; however, only one allegation is relevant because it is

submitted by an impartial witness and pertains to Rabbi Kauffman's actions *during* the arbitration proceedings. Appellants claim that on March 30, 2012—prior to the issuance of the award—David Paneth overheard Kaufman in his office telling non-party Zisha Gelb to "[t]ell [the president of Kolel] that he has to give me another week and he will receive a 'psak' [a ruling or decision] in his favor." Appellants also claim that Kaufman subsequently proceeded to "ice out" Rabbi Bergman (Appellants' appointed arbitrator) from the proceedings, abruptly cut off Appellants' first fact witness, and rushed the panel to a premature decision before the presentation of the evidence.

## LEGAL FRAMEWORK

### A. Standard of Review

This Court reviews a district court's decision to confirm or vacate an arbitration award *de novo* for questions of law. *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012). We review findings of fact for clear error. *Id.* We review a decision to deny an evidentiary hearing for abuse of discretion. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). This Court also reviews *de novo* a motion for reconsideration. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 52 n.4 (2d Cir. 2012) (applying a *de novo*, rather than abuse of discretion, standard in reviewing an order denying reconsideration of an order).

### B. Federal Arbitration Act and UN Convention

The role of a district court in reviewing an arbitration award is "narrowly limited" and "arbitration panel determinations are generally accorded great deference under the [Federal Arbitration Act]." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997). This

deference promotes the "twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009). Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as "there is a barely colorable justification for the outcome reached." *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (internal quotation marks omitted).

Appellants argue that the award should be vacated under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a) (2006), and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201–08. A district court must confirm an arbitration award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

Specifically, Appellants challenge the award under § 10(a)(2) of the FAA. This section allows for vacatur "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). "Evident partiality may be found only 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Scandinavian*, 668 F.3d at 64 (internal citations omitted). Although a party seeking vacatur must prove evident partiality by showing "something more than the mere 'appearance of bias,'" *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefits Fund*, 748 F.2d 79, 83 (2d Cir. 1984), "[p]roof of actual bias is not required." *Scandinavian*, 668 F.3d at 72. Rather, "partiality can be inferred 'from objective facts inconsistent with impartiality.'" *Id.* (quoting *Pitta v. Hotel Ass'n of N.Y.C., Inc.*, 806 F.2d 419, 423 n.2 (2d Cir. 1986)). A showing of evident

partiality must be direct and not speculative. *See Sanford Home for Adults v. Local 6, IFHP*, 665 F. Supp. 312, 320 (S.D.N.Y. 1987). Although this Court has spoken to the standard regarding "partiality," *see Scandinavian*, 668 F.3d at 64, we have not yet articulated the standard for vacating an award under the "corruption" ground of § 10(a)(2). In *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir. 1951), we stated that under 9 U.S.C. § 10(a), "[t]he award here must stand unless it is made abundantly clear that it was obtained through corruption, fraud, or undue means." (internal quotation marks omitted). We therefore hold that the same standard of *Scandinavian* applies to this case. Evidence of corruption must be abundantly clear in order to vacate an award under § 10(a)(2).

Courts may also vacate an arbitration award when "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). We have held that misconduct occurs under this provision only where there is a denial of "fundamental fairness." *Tempo Shain*, 120 F.3d at 20. Thus, under our narrow construction, when a party seeks to vacate an arbitration award based on evidence that is "too remote" an arbitration decision may not be opened up to evidentiary review. *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 449 (2d Cir. 2011).

**C. Motion for Reconsideration**

A motion for reconsideration should be granted only when the defendant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

**DISCUSSION**

There is one issue on appeal: whether there was "abundantly clear" evidence of corruption to vacate the arbitration award under the FAA, where (1) no records of the arbitration proceeding were kept; (2) all parties agreed that the arbitrators could reach their decision by any legal, factual, or other basis; (3) an affidavit submitted to the district court alleged that the neutral arbitrator was overheard promising one of the parties a favorable ruling; (4) the affiant testified that he was threatened for making his testimony; and (5) the arbitration panel issued its ruling with only two of the three arbitrators present.

Appellants' challenge to the district court's rulings can be broken down into three distinct arguments. First, Appellants claim that the district court erroneously denied their motion for vacatur because the neutral arbitrator, Rabbi Kaufman, was corrupt and evidently biased in favor of Kolel. Second, they argue that the district court should have granted their motion for vacatur because Rabbi Kaufman's bias resulted in a premature decision without consideration of material and pertinent evidence. Third, they argue that the district court erroneously denied their motion for reconsideration.

**A. The District Court Properly Denied Vacatur Based On Claims of Bias and Corruption**

Appellants claim that the award should be vacated pursuant to § 10(a)(1) ("corruption, fraud, or undue means") or § 10(a)(2) ("evident partiality or corruption") because Kaufman was biased in favor of Kolel. In support of this claim, Appellants submit an affidavit that prior to the issuance of the award, non-party David Paneth overheard Rabbi Kaufman telling non-party Zisha Gelb to "[t]ell [the president of Kolel] that he has to give me another week and he will receive a [ruling] in his favor." Appellants also claim that Rabbi Kaufman purposely excluded Rabbi

Bergman (the Appellants' chosen arbitrator) from the arbitration, abruptly cut off their first witness (the Appellants' attorney, Douglas Stein), and rushed the Panel to a premature decision before the presentation of evidence. Specifically, Appellants allege that Kaufman purposely held a crucial meeting on April 10, 2012, despite knowing that Rabbi Bergman was unavailable because of Passover, and that Kaufman engaged in *ex parte* communications with Kolel on April 9 and 10, prior to issuance of the award, regarding preparations for transference of the Policies to Kolel.

Appellants bear a high burden of demonstrating "objective facts inconsistent with impartiality." *Scandinavian*, 668 F.3d at 72 (quoting *Pitta*, 806 F.2d at 423 n.2); *see also Karppinen*, 187 F.2d at 34 ("It goes without saying that there should be great hesitation in upsetting an arbitration award. The award here must stand unless it is made abundantly clear that it was obtained through 'corruption, fraud, or undue means.'"). Because there is no transcript of the arbitration proceedings, and there are few records beyond the Purchase Agreement, Arbitration Agreement, and the Award, the parties rely on various affirmations to support their arguments. Most of the "newly discovered" information that Appellants submit regarding Rabbi Kaufman is either irrelevant to this proceeding, unreliable, or both.

Appellants offer only one affidavit that is from an individual *without* an obvious stake in the outcome of the arbitration and *with* firsthand knowledge of the pertinent facts or events: that of David Paneth. Paneth says that on March 30, 2012 he overheard the conversation between Rabbi Kaufman and Gelb and that he knows that Gelb is a "very close associate" of Rabbi Kaufman. Rabbi Kaufman denies that the conversation took place, states that he was in another

part of the state (for this very arbitration) on that day, and indicates that Paneth is biased against him because of another matter.

Even assuming that this conversation took place exactly as Paneth describes and construing all facts in Appellants' favor, this does not rise to the level of bias or corruption necessary to vacate an arbitration award under § 10(a)(2). This conversation is not "direct" or "definite" evidence of bias, *see Sanford*, 665 F. Supp at 320, but simply the arbitrator's statement of his opinion after several arbitration proceedings. *See Ballantine Books Inc. v. Capital Distrib. Co.*, 302 F.2d 17, 21 (2d Cir. 1962) ("While it is better in most cases for arbitrators to be chary in expressing any opinion before they reach their ultimate conclusion, and to avoid discussing settlement, it does not follow that such expressions are proof of bias.").

Appellants do not present any direct or plausible evidence, let alone any clear and convincing evidence indicating why or how Rabbi Kaufman is biased toward Kolel or the nature of any relationship between Kolel and Kaufman. *See Sanford*, 665 F. Supp. at 320 ("[I]n evaluating the purported bias of an arbitrator, the courts look at: (1) the financial interest the arbitrator has in the proceeding; (2) the directness of the alleged relationship between the arbitrator and a party to the arbitration proceeding; (3) and the timing of the relationship with respect to the arbitration proceeding."). However, this Circuit now holds, and others agree, it must be done by clear and convincing evidence. *See Flexible Mfg. Sys. PTY. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996). As the district court noted:

> The affirmation of one individual as to a conversation he overheard in unclear circumstances regarding a dispute about which he had no personal knowledge does not qualify as objective evidence of impartiality. Indeed, even if the Court credits what Paneth overheard, the conversation between Kaufman and Gelb is not "direct" or "definite" evidence of bias, but merely one arbitrator's unguarded expression of his opinion after five or six arbitration proceedings.

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 878 F. Supp. 2d 459, 466

(S.D.N.Y. 2012) (internal citation omitted).

Given that YLL has failed to show any "abundantly clear" evidence of corruption, we affirm the district court's decision. Indeed, Appellants' allegations of evident partiality are too "remote, uncertain, or speculative," *see Sanford*, 665 F. Supp. at 320, to satisfy § 10(a)(1) or (2), especially since there is no record of the proceedings and the parties' conflicting accounts amount to little more than "he-said, she-said" factual disputes. *See Ballantine Books, Inc.*, 302 F.2d at 21 (stating that a comment expressing a preference for an outcome, made during a proceeding, did not show bias).

The district court's denial of vacatur under § 10(a)(2) was appropriate because a reasonable person would not "*have to*" conclude that Kaufman was partial to Kolel, or biased against Appellants. *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (emphasis added); *Sanford*, 665 F. Supp. at 317. Furthermore, Appellants have failed to show that the Award was a product of "corruption, fraud, or undue means" under § 10(a)(1). It is not "abundantly clear" that the Award was procured through any of these improper means. *See Karppinen*, 187 F.2d at 34. Appellants have failed to suggest—let alone to prove—what, if anything, Rabbi Kaufman stood to gain or what special connection he had with Kolel that would have given plausible reason to corrupt his decision.

**B. The District Court Properly Denied Vacatur Based on Claims of Premature Decision and Failure to Consider Evidence**

Appellants also claim that the district court should have vacated the Award pursuant to § 10(a)(3), because the Panel refused to hear evidence "pertinent and material to the

controversy," and the Award therefore violated public policy and due process. 9 U.S.C. § 10(a)(3).

It is undisputed that the Panel issued the Award on April 10, 2012 after only one witness had testified at a previous hearing for less than a half hour. Appellants claim that Kaufman "shockingly" and unilaterally interrupted the witness's testimony and stated that there was an urgency to conclude certain matters. Kolel, on the other hand, states that Stein left the hearing early and the parties cross-moved for summary judgment on the issue of ownership of the Policies. Again, there is no transcript of the proceeding, so there is no way to be sure what happened in the arbitration session.

Even giving full credence to Appellants' portrayal of the facts, they have failed to show that the Panel violated "fundamental fairness" in conducting the arbitration or that its ultimate decision was fundamentally unfair. *See Tempo Shain*, 120 F.3d at 20. Arbitrators are accorded great deference in their evidentiary determinations, and "'need not follow all the niceties observed by the federal courts.'" *Id.* (quoting *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974)). "[A]lthough [he] is not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to a dispute an adequate opportunity to present its evidence and argument." *Id.* at 20 (internal quotation marks omitted).

The Panel's decision to hear only one witness does not make the arbitration fundamentally unfair. The Panel held seven or eight sessions, for more than thirty hours total, to consider legal arguments from both sides before it issued the Award, and was not required to hear more—or any—testimony to reach its determination. *See Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 285 (S.D.N.Y. 2007) ("[A]rbitration proceedings require merely an

expeditious and summary hearing, with only restricted inquiry into factual issues." (internal quotation marks omitted)). Further, the primary issue in the arbitration was one of contractual interpretation, which is a question of law and would not necessarily require "reference to external evidence." *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002). The Panel listed the evidentiary bases for its decision, briefly but sufficiently. As this Court has recently held, "Arbitrators have substantial discretion to admit or exclude evidence." *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, __ F.3d __, 2013 WL 3927615, at *8 (2d Cir. July 13, 2013). Moreover, "[o]ur review is restricted to determining whether the procedure was fundamentally unfair." *Tempo Shain*, 120 F.3d at 20 (internal quotation marks omitted). In the instant case, there is no transcript or recording of the arbitration proceedings and the parties do not agree on multiple disputed facts. Without a more detailed record of the proceeding, the party seeking vacatur cannot meet the high threshold in order to warrant vacating the award. Therefore, the district court properly declined to vacate the award pursuant to § 10(a)(3) or under the Convention.

**C. The District Court Properly Denied Appellants' Motion for Reconsideration**

Appellants also appeal the district court's denial of their motion for reconsideration of the district court's denial of their motion for vacatur. Appellants claim that they have uncovered new evidence—specifically the declarations and affirmations of several non-parties—about Rabbi Kaufman's reputation in the community and that fraud and corruption tainted the arbitration proceedings.

It is well-settled that a party may move for reconsideration and obtain relief only when the defendant identifies "an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255 (internal quotation marks omitted).

The vast majority of the declarations Appellants offer regard disputes and matters not relevant to this proceeding or not before the Court (such as Rabbi Kaufman's work on other rabbinical panels and his reputation in the community), or that happened after the arbitration panel issued the Award (allegations of threats and witness tampering). One potentially relevant declaration is that Rabbi Kaufman and non-party Zisha Gelb have a close relationship. However, even considering all of the affidavits and affirmations Appellants present, these offers are not sufficient relevant, direct, and definite evidence of bias to meet the high standard necessary to vacate an arbitral award, let alone to reconsider the district court's prior decision and order.

The district court properly found that Appellants did not present any new facts or controlling law that the court overlooked that might reasonably be expected to alter the court's decision and order.

## CONCLUSION

For the foregoing reasons, we conclude that the district court properly denied Appellants' motion for vacatur and properly granted Kolel's motion for confirmation of the arbitration award. We also conclude that the district court properly denied Appellants' motion for reconsideration. **AFFIRMED**.